**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Bradley,<br><br>    Plaintiff,<br><br>vs.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | CIV 16-03556-PHX-MHB<br><br>**ORDER** |

Pending before the Court is Plaintiff Barbara Bradley's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

On January 13, 2013, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act. She alleged disability beginning July 1, 2011. The application was initially denied on June 6, 2013. It was again denied upon reconsideration on September 26, 2013. Plaintiff requested a hearing, and on February 3, 2015, she appeared and testified before the ALJ. On March 20, 2015, the ALJ issued a decision finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Thereafter, Plaintiff sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (quotation marks omitted). "Substantial evidence" means more than a mere scintilla, but less than a preponderance. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

"The inquiry here is whether the record ... yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions. See Reddick, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." Gallant, 753 F.2d at 1453 (citations omitted); see Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); see Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the Commissioner's decision, the Court must affirm it. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quotation marks omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether a plaintiff is or is not disabled. Rather, the Court's inquiry is

constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 1, 2011 – the alleged onset date. (Transcript of Administrative Record ("Tr.") at 15.) At step two, she found that Plaintiff had the following severe impairments: essential hypertension, hyperlipidemia, lumbar degenerative disc disease, and dysfunction of her left knee. (Tr. at 15-18.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 18.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds. She can frequently balance. She can occasionally stoop, kneel, crouch, and crawl. She can have frequent contact with fumes, odors, dust, gases, and poor ventilation[1]." (Tr. at 18-23.) The ALJ determined that Plaintiff was able to perform "past relevant work as a case manager, DOT 195, 107-030, sedentary, skilled, SVP 7, and a front desk clerk, DOT 237.367-010, sedentary, semi-skilled, SVP 3. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)." (Tr. at 23-24.) Therefore, the ALJ concluded that Plaintiff has not been under a disability from June 1, 2011, through the date of her decision. (Tr. at 24.)

## IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) failing to properly consider her subjective complaints; and (2) failing to properly weigh medical source opinion evidence. Plaintiff requests that the Court remand for determination of benefits.

### A.  Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in rejecting her subjective complaints in the absence of clear and convincing reasons for doing so. Plaintiff specifically refutes the ALJ's analysis and conclusions drawn from the objective medical evidence, Plaintiff's medical treatment and activities of daily living, and the fact that Plaintiff received unemployment benefits.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 4 -

'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn, 495 F.3d at 637-39.[2] The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284 (citation omitted).

---

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

On March 15, 2013, Plaintiff filled out a function report in which she outlined her impairments and symptoms and how they affect her activities of daily living. (Tr. 182-89.) Plaintiff stated she could not sit for long periods because it caused stiffness and back pain. She suffered from anxiety and panic attacks under stress and found long hours at work debilitating. Plaintiff reported chronic neck pain and her knees would swell from walking too much. She could not get comfortable and had broken sleep at night. Plaintiff alleged that her impairments affected her ability to lift, stand, walk, sit, climb stairs, kneel, squat, bend, and reach. (Tr. 182-89.)

At the hearing held on February 3, 2015, Plaintiff testified that she lives with three grandchildren. (Tr. at 37.) She testified that she left her job in 2011 due to mini heart attacks and two prior strokes. Her prior job as a case manager required lifting files weighing up to 25 pounds. (Tr. at 38.) Plaintiff stated that she was taking courses toward a bachelor's degree in psychology through an online college. Plaintiff stated that she uses a text- to-talk program so she does not have to type. (Tr. at 40.) Plaintiff stated that she is not able to work because it is difficult and painful to sit still, stand and bend for long periods of time. (Tr. at 41.) She testified that chronic pain and depression interfere with returning to work. Plaintiff said that she takes her grandchildren back and forth to school but she is not able to do any other activities with them. She stated that depression "sits" on her. (Tr. at 42.) Plaintiff testified that her 11-year old grandchild helps her with household duties such as packing lunches. Plaintiff stated that since a car accident in January, she has had a lot of stiffness. (Tr. at 43.) She testified that deadlines and schedules cause anxiety and panic. (Tr. at 44.) She described her prior work as being overwhelming. Her doctor increased her behavioral medication to treat her panic attacks but she continues to have panic attacks twice a month that interrupt whatever she is doing until she takes Xanex. (Tr. at 46.) She stated that sometimes the Xanex does not relieve her panic attack. (Tr. at 47.) Plaintiff stated that she was experiencing panic attacks at work due to stress that included chest pain. (Tr. at 49.) Plaintiff described her fibromyalgia as a gnawing, uncomfortable pain in her hands, feet, neck or other parts of her body. She testified that she experiences pain from reaching to buckle her grandson into his

car seat and from doing laundry. (Tr. at 50.) She can only do school work for 30-35 minutes and then she needs to take a break for 3-4 hours. She is given extra time to get her school work completed. (Tr. at 52.) Plaintiff explained that due to fatigue, she has difficulty getting her school work done, resulting in poor grades, failed classes and a feeling of being burnt out. (Tr. at 53.) Plaintiff attended the hearing with a cane that she testified she used due to weakness in her legs. (Tr. at 54.) She also stated that she will sometimes need a scooter in the store. She testified that she has been diagnosed with a bulging disc and arthritis in her back and neck. (Tr. at 54-55.)

The ALJ found that Plaintiff's statements were not entirely credible. The ALJ based her credibility determination on Plaintiff's: (1) statements and testimony being inconsistent with the objective medical evidence; (2) conservative medical treatment; (3) receipt of unemployment benefits; and (4) activities of daily living.

### 1. Objective Medical Evidence

The ALJ first noted that Plaintiff's allegations regarding the severity of her physical symptoms and limitations were not supported by the objective medical findings of record. While an ALJ may reject a Plaintiff's testimony about the severity of her symptoms, he must "point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims." Vasquez v. Astrue, 572 F.3d 586, 592 (9th Cir. 2009). And, as the Ninth Circuit has made clear, if "the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991).

The ALJ discussed the medical evidence in the administrative record with regards to Plaintiff's complaints and impairments related to her hypertension, hyperlipidemia, lumbar degenerative disc disease, and dysfunction of her left knee. She identified some areas of Plaintiff's allegations wherein Plaintiff's ability to function was qualified or contradicted by the medical record.

In discussing Plaintiff's knee issues, citing to medical records from Earl Feng, M.D., at the Orthopedic Clinic Association, the ALJ first noted that Plaintiff had a slow and halting gait, mild intra-articular swelling bilaterally, pain in flexion on both sides, pain along the joint line, and minimal crepitation. However, the ALJ also noted that Plaintiff was ambulating without support, could get up on the examination table without difficulty, she had good maintenance of her range of motion, no instability, and her distal strength and neurovascular strength were intact. (Tr. at 272-73.)

The ALJ noted additional inconsistencies in the record stating that some examinations showed that Plaintiff had a slight antalgic gait of the left, but other examinations showed that her gait was normal. The ALJ further found that medical reports had not shown that Plaintiff relied on a cane or other assistive device to move around. (Tr. at 272-73, 282-438, 445-85, 502-855, 871-1071.)

Generally, the ALJ found that Plaintiff's routine physical examinations often showed "few significant results" and "most exams showed no limitations." The ALJ specifically cited to an August 2012 report from Pioneer Cardiovascular Consultants indicating that Plaintiff was well developed and in no apparent distress. She had a regular heart rate and rhythm; her extremities showed no signs of clubbing or cyanosis, or edema; her gross motor and sensory functions were symmetric; and she was alert and answered all questions appropriately. (Tr. at 275.) The ALJ found similar findings throughout the record. (Tr. at 279-81, 1072-92.) Likewise, the ALJ found that physical examinations at the East Valley Family Medical Center were consistent, again, indicating a well-developed general appearance in no acute distress – Plaintiff's chest was clear, she had no other complications in her systems, and her gait was normal. (Tr. at 282.) These findings were similar to other examinations completed at this same medical center. (Tr. at 282-438, 502-855, 871-979.)

Regarding Plaintiff's hypertension and hyperlipidemia, citing to medical records from East Valley Family Medical, although the ALJ noted inconsistencies in Plaintiff's blood pressure, she also found that the record demonstrated that Procardia medication appeared to control her condition. (Tr. at 871-979.) "Impairments that can be controlled effectively with

medication are not disabling for the purpose of determining eligibility for [disability] benefits." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (citing Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004)); Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication)).

The Court finds that the inconsistencies between Plaintiff's testimony and the objective medical record are a clear and convincing reason to discount parts of Plaintiff's testimony.

### 2. Conservative Medical Treatment

The ALJ also discounted Plaintiff's symptom testimony finding that she received "rather benign, conservative medical treatment." A conservative course of treatment may discredit a claimant's allegations of disabling symptoms. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (an ALJ may infer that a claimant's "response to conservative treatment undermines [his] reports regarding the disabling nature of his pain"); Parra, 481 F.3d at 750-51; Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (failure to request "any serious medical treatment for [claimant's] supposedly excruciating pain" was adequate reason to reject claimant's pain testimony); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir.1995) (conservative treatment can suggest a lower level of both pain and functional limitation, justifying adverse credibility determination).

Here, the ALJ merely provided a general, conclusory assertion regarding Plaintiff's treatment despite a bulk of information set forth in the medical record. The Court fails to find this a clear and convincing reason to discount Plaintiff's testimony.

### 3. Unemployment Benefits

The ALJ also discounted Plaintiff's allegations about the severity of her symptoms and limitations because she received unemployment benefits. The receipt of unemployment benefits may undermine a claimant's alleged inability to work full time. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (citing Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988)). This is because unemployment benefit applications

sometimes require that a claimant hold himself out as available for full-time work. Copeland, 861 F.2d at 542.

Here, Plaintiff's unemployment benefits application is not in the record before this Court. As such, the Court cannot determine the details regarding Plaintiff's availability for full-time work. And, her receipt of unemployment benefits does not constitute a clear and convincing reason for discrediting Plaintiff's credibility. See Carmickle, 533 F.3d at 1162 (recognizing that receipt of unemployment benefits is only inconsistent with a claimant's disability allegations when a claimant holds himself out as available for full-time work-as opposed to part-time work-in the unemployment benefits application).

### 4. Activities of Daily Living

Lastly, the ALJ determined that Plaintiff's allegations are not consistent with her activities of daily living. An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). Daily activities may be grounds for an adverse credibility finding if: (1) the plaintiff's activities contradict his other testimony; or (2) the plaintiff "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Orn, 495 F.3d at 639 (citing Fair, 885 F.2d at 603.

Here, the ALJ discussed Plaintiff's activities of daily living as follows:

> The claimant has adopted two young grandsons and is taking care of a third small grandchild on her own. She reported she was able to help them by bathing them, cooking for them, shopping, doing laundry and chores for them, and helping them with their homework. She also able to take care of herself. She is able to perform personal care such as dressing, bathing, and grooming with some help. The claimant is able to prepare simple meals, do some chores around the house, drive, go out alone, shop, and handle finances (Exhibit 4E).This behavior is not consistent with someone who is unable to do much and cannot handle stress. The claimant's treating physician acknowledged while filling out disability paperwork for the claimant that the claimant did not need a full-time caretaker and she could take care of her own children and stay by [herself] (Exhibit 17F).

(Tr. at 21.)

1    Plaintiff argues that these activities are not inconsistent with her statements that she is not able to walk for more than a half block, has pain with several positions, needs frequent breaks, and needs additional time to complete tasks.

The Court fails to find Plaintiff's activities of daily living a clear and convincing reason to discount Plaintiff's testimony. Rather than explaining how Plaintiff's activities detract from Plaintiff's testimony, and providing an analysis of why Plaintiff's activities were inconsistent with the limitations asserted by Plaintiff, the ALJ simply dismisses her allegations in a conclusory fashion. The listing of activities and implying that said activities are performed consistently and regularly over an eight hour day is insufficient.

In summary, the Court finds that the ALJ has failed to provide a sufficient basis to find Plaintiff's allegations not entirely credible. While perhaps any one of the individual factors identified by the ALJ could arguably detract from Plaintiff's credibility, such factors viewed in isolation are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations as a whole. Thus, the Court concludes that the ALJ has failed to support her decision to discredit Plaintiff's credibility with specific, clear and convincing reasons and, therefore, the Court finds error.

**B.     Medical Source Opinion Evidence**

Plaintiff contends that the ALJ erred by improperly weighing medical opinion evidence. Plaintiff specifically states that the ALJ failed to properly weigh the opinions of her treating pain management doctor, Shimul Sahai, M.D., and treating physician, Manju Krishna Pillai, M.D.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But, the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(2), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. See Lester, 81 F.3d at 830. Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. See Andrews, 53 F.3d at 1040-41; see also 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. See Lester, 81 F.3d at 830 (citation omitted). Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole[] or by objective medical findings," Batson, 359 F.3d at 1195, or if there are significant discrepancies between the physician's opinion and her clinical records, see Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830-31 (citation omitted). To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). Under either standard, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, 'rather than the doctors', are correct." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

Since Drs. Sahai and Pillai's opinions were contradicted by other objective medical evidence of record, the specific and legitimate standard applies.

According to the record, Dr. Sahai completed a student disability questionnaire in which he stated that based on x-rays, MRIs and physical exams, Plaintiff needed flexibility to stand at will and that her pain would cause some distraction. (Tr. at 486.)

The ALJ gave this assessment and the fact that Plaintiff was granted a disability parking identification little weight stating that other government agencies and private entities have a different set of requirements for determining disability. The ALJ properly noted that the Social Security Administration has its own determinations for permanent disability, giving a specific and legitimate reason for affording Dr. Sahai's opinion little weight.

The Court declines to discuss this argument at length as Plaintiff's ability to perform in the educational environment (or qualify for a disabled parking permit) does not necessarily bear on Plaintiff's residual functional capacity to perform work.

As to Dr. Pillai, he completed a check-the-box form stating Plaintiff had chronic back problems and was currently on medical treatment. He stated that Plaintiff had been disabled since 2011, but that her condition was not an emergency medical condition. Dr. Pillai stated Plaintiff had mental or physical limitations that prevented her from performing substantially gainful employment for which she is qualified. (Tr. at 22, 1105-06.) The record also contains a February 11, 2015 note from Dr. Pillai simply listing Plaintiff's conditions, and another note on July 30, 2008, stating that Plaintiff has severe neck pain, wrist pain, chest pain, and hypertension and needed to do half of the amount of work load that she had until evaluated later. (Tr. at 22, 1119, 823.)

The ALJ afforded Dr. Pillai's opinion that Plaintiff is disabled little weight his opinion was memorialized on a check-the-box form that provided little explanation. The ALJ found the opinion vague and general, and found that Dr. Pillai provided an ultimate conclusion regarding disability, which is a decision reserved for the Commissioner. The ALJ noted internal inconsistencies in Dr. Pillai's opinions, and also found that his notes in the record are vague and conclusory, and do not reflect Plaintiff's current symptoms or complaints.

The Court finds that the ALJ properly gave specific and legitimate reasons that are supported by substantial evidence in the record for affording Dr. Pillai's opinion little weight.

An ALJ may properly reject the opinion of a treating physician "'if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)). An "ALJ may [also] 'permissibly reject [] ... check-off reports that [do] not contain any explanation of the bases of their conclusions.'" Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

## V. CONCLUSION

Where the ALJ improperly rejects a claimant's testimony regarding her limitations, and the claimant would be disabled if her testimony were credited, "we will not remand solely to allow the ALJ to make specific findings regarding that testimony." Lester, 81 F.3d at 834. An action should be remanded for an award of benefits when the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. See Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where these conditions are met, the court may, nevertheless, exercise "flexibility" in applying the credit-as-true rule and remand for further proceedings where remand would permit the ALJ to make specific credibility findings or otherwise resolve inconsistencies in the record. See Connett, 340 F.3d at 876. However, the Ninth Circuit has made clear that remand simply to permit the ALJ to decide the same issue again is inappropriate. See Garrison, 759 F.3d at 1021-22.

"[R]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find claimant disabled if all the evidence were properly evaluated." Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) (citing Vasquez, 572 F.3d at 593). "[T]he proper course, except in rare circumstances, is remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16 (2002) (per

- 14 -

curiam). The Ninth Circuit has held that when "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) (remanding "to the Secretary for proper consideration of step three equivalence"). Here, the record contains evidentiary conflicts that make an award of benefits inappropriate and require further evaluation on remand. Specifically, remand is appropriate for a renewed residual functional capacity assessment, which accurately addresses Plaintiff's credibility.

For the reasons discussed in this Order, the Commissioner's decision will be vacated and this matter will be remanded for further administrative proceedings consistent with this Order.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is **VACATED** and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth in this Order;

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

DATED this 26th day of March, 2018.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge